IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| LATTHEN CHANCE DOUGLAS | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 1:18-CV-312 |
| | § | |
| DIRECTOR, TDCJ-CID | § | |
| | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner, Latthen Chance Douglas, an inmate formerly confined at the Mark Stiles Unit of the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se*, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

The above-styled action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and the Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Factual & Procedural Background

Petitioner contests the validity of a prison disciplinary case number 20180084004 wherein petitioner was found guilty of the disciplinary offense of "threatening an officer." Petitioner outlines his claims as follows:

1. The evidence is legally and factually insufficient to support guilty [sic] in violation of amendments five and fourteen of the U.S. Constitution.

   No evidence presented to prove threatened Captain Boykin. Boykin introduced false testimony. Exculpatory evidence (security

        recordings) was destroyed. Douglas was not allowed relevant and necessary defense witnesses. Captain Knod was not an impartial decision maker. Knod stopped the audio recording of the hearing several times to make prejudicial and bias [sic] comments.

2. Fabricated disciplinary charge in retaliation for submitting grievance in violation of amendments one and fourteen of the U.S. Constitution.

        Douglas filed a grievance in response to Officer Gabba's sexual abuse and misconduct after being told by unit mental health personal [sic]. Douglas filed a grievance after Boykin threatened and assaulted Douglas. Douglas told Boykin he would contact his family in order for them to contact Huntsville Ombudsman to file a complaint for Boykin denying diabetic treatment and assaulting of Douglas. Boykin locked Douglas in administration segragation [sic].

3. Douglas was denied prehearing investigation in violation of amendments five, six, and fourteen of the U.S. Constitution.

        Douglas requested counsel substitute McCord to interview witnesses, review and preserve security recordings, and review investigation file of incident to prepare for hearing, which she failed to do. Douglas requested McCord to review the investigation file of the grievances Douglas submitted on Gabba and Boykin. Manual was not original counsel and was unprepared to assist.

Original Petition, pg. 6 (docket entry no. 1). Petitioner received the following punishment: reduction in classification from G-3 to G4 and 2-4 to Line-1; 45 days loss of recreation; 45 days loss of commissary; 45 days cell restriction; and 45 days loss of telephone privileges. Petitioner concedes he is not eligible for mandatory supervision and did not lose good conduct time. For relief, petitioner requests his disciplinary case be overturned and expunged, his custody level and line classification be restored, that he be given credit and adjustment of good and work time to reflect time spent in administrative segregation and prehearing detention and new classification, he be awarded all costs and fees, and any other relief the court may find he is entitled.

Respondent was ordered to Show Cause and filed a Response along with the State Court Records on February 6, 2019 (docket entry nos. 24 & 25). Respondent argues that although petitioner list his claims as three claims, they are actually seven distinct claims existing of the following:

1. There was insufficient evidence to support the disciplinary finding;
2. The finding relied on false testimony;
3. Exculpatory evidence found in security recordings was destroyed;
4. Douglas was not allowed to bring forth defense witnesses;
5. The disciplinary hearing judge was impartial as the hearing recording was stopped for the judge to make prejudicial statements;
6. The disciplinary case was brought in retaliation against Doulgas, who filed grievances against Officers Gabba and Boykin; and
7. Douglas was denied the right to counsel because his original counsel substitute, who had been working with him before the hearing, was replaced with a new, unprepared substitute counsel.

Respondent argues petitioner's claims 3-7 are unexhausted and procedurally barred or, alternatively, are all without merit.

## Analysis

***Exhaustion***

When an inmate challenges a prison disciplinary action, he is essentially attacking the fact or length of his confinement, which is a challenge cognizable through a petition for writ of habeas corpus. *See Wilson v. Foti*, 832 F.2d 891, 892 (5th Cir. 1987).

Moreover, the inmate must exhaust all administrative remedies before filing the petition. The law governing the exhaustion of administrative remedies is 42 U.S.C. § 1997e. In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The provision was unanimously upheld by the Supreme Court in *Booth v.*

*Churner*, 532 U.S. 731 (2001). The Court subsequently held that exhaustion is mandatory and that the requirement will not be excused when an inmate fails to properly exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Proper exhaustion means that an inmate must not only pursue all available avenues of relief but must also comply with all administrative deadlines and procedural rules. *Id*. at 90-91. The Fifth Circuit recently reiterated the principle that "[p]re-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

The Supreme Court elaborated further about the exhaustion requirement in *Jones v. Bock*, 549 U.S. 199 (2007). It was noted that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id*. at 211. It was added, however, that the "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Id*. at 216. In light of *Jones v. Bock*, the Fifth Circuit provided guidance concerning how the exhaustion question should be handled in *Dillon v. Rogers*, 596 F.3d 260 (5th Cir. 2010). The following procedures were outlined:

> As a final matter, we now provide a brief summary of how district courts should approach exhaustion questions under the PLRA. When the defendant raises exhaustion as an affirmative defense, the judge should usually resolve disputes concerning exhaustion prior to allowing the case to proceed on the merits. If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary.

*Id*. at 272-73.

The Texas Department of Criminal Justice provides a two-step procedure for processing grievances and provides inmates with detailed instructions on how to file grievances. *Johnson v.*

*Johnson*, 385 F.3d at 515-16. An inmate must complete both a Step 1 and Step 2 grievance in order to properly exhaust his administrative remedies. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). Most recently, the Fifth Circuit upheld the grant of summary judgment where the competent summary judgment evidence revealed that grievances tendered by a Texas prison inmate were returned as unprocessed because he did not follow prison guidelines for filing grievances and thus had not exhausted his administrative remedies. *Stout v. North-Williams*, 476 F. App'x 763, 765 (5th Cir. 2012).

Importantly, the exhaustion requirement applies to prison disciplinary challenges in the habeas corpus context. *See Anthony v. Johnson*, 177 F.3d 978, 978 (5th Cir. 1999) (per curiam) ("Accordingly, a Texas prisoner seeking to challenge the outcome of a prison disciplinary hearing in a habeas corpus proceeding need exhaust only prison grievance procedures."); *Johnson v. Williams*, 2011 WL 13205603 *11 (W.D. Tex. Aug. 5, 2011) (The exhaustion requirement of § 2254 also applies to disciplinary proceedings.").

Here, a review of petitioner's grievances reveals petitioner only exhausted the claims of insufficiency of the evidence and falsification of the evidence. These are the only claims petitioner brought through both the step 1 and step 2 grievance process. *See* Disciplinary Grievance Records, pgs. 1- 6 (docket entry no. 25-1). Petitioner's argument that Respondent misconstrued his claims by breaking them down into seven distinct claims is unavailing. The requirement of exhaustion with respect to disciplinary challenges follows the traditional doctrine of exhaustion that allows state courts to be previously apprised of the same facts and legal theories urged by a petitioner in a federal application. *Brown v. Estelle*, 701 F.2d 494 (5th Cir. 1983). In the context of prison administration, this requirement affords proper deference to prison officials' decisions and

administration of the prison system. *See Sandin v. Conner*, 515 U.S. 472 (1995). The TDCJ-CID grievance committee must be given an opportunity to consider the same factual grounds under the identical legal theories before petitioner is permitted to bring his constitutional claims to this court. In this case, TDCJ officials were not afforded the opportunity to review petitioner's claims 3 through 7 as he did not assert these claims in both the step 1 and step 2 grievance. Any attempt to exhaust these claims now would be untimely under TDCJ rules and thus would be procedurally defaulted.[1] Having failed to properly exhaust his administrative remedies with respect to claims 3 through 7, petitioner is barred from bringing them before this court for federal habeas corpus relief. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1) (1991)); *see also Gosselin v. Dir., TDCJ-CID*, 2021 WL 1305388 (E.D. Tex. 2021); *Moffatt v. Dir., TDCJ-CID*, 390 F.Supp.2d 560, 563 (E.D. Tex. 2005) (accepting Respondent's argument that, in Texas, "unexhausted disciplinary cases are procedurally barred from federal habeas corpus review because they cannot be reviewed in the prison grievance process" and extending procedural default doctrine to cases involving prison disciplinary proceedings.). Petitioner has failed to either demonstrate cause or prejudice for failing to exhaust administrative remedies or a fundamental miscarriage of justice. Accordingly, petitioner's claims are unexhausted, and petitioner is procedurally barred from raising his claims.

When a petitioner has not exhausted all claims prior to coming to federal court, such as this case, the district court should dismiss the entire federal habeas petition and not allow petitioners to

---

[1] *See* TDCJ-CID Offender Orientation Handbook, http://www.tdcj.state.tx.us/documents/Offender_orientation_Handbook_English.pdf at 73-75 (establishing that offenders have fifteen days from the date of the incident to raise a step-one grievance and fifteen days from a denial of a step-one grievance to file a step-two grievance).

split, or piecemeal, claims. *See Strickland v. Thaler*, 701 F.3d 171, 174 (5th Cir. 2012); *Rose v. Lundy*, 455 U.S. 509, 510 (1982). Therefore, Respondent's Motion to Dismiss should be granted. In the alternative, for the reasons stated below, petitioner's petition fails to state a claim upon which relief may be granted.

***Merits***

Prisoners charged with rule violations are entitled to certain due process rights under the Fourteenth Amendment when the disciplinary action may result in a sanction that will impose upon a liberty interest. State-created liberty interests protected by the Due Process Clause are generally limited to freedom from restraint imposing an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472 (1995).

In *Sandin*, the Court adopted a new and different methodology for determining whether a state has created a protected liberty interest to benefit prison inmates. *Id*. at 477-78. Rather than focusing on the presence or absence of mandatory statutory or regulatory language, [*See, e.g.*, *Hewitt v. Helms*, 459 U.S. 460 (1983).] the Supreme Court determined that the reviewing court should consider the nature of the challenged state action and whether it involved such a significant departure from normal prison conditions that the state might have conceivably created a liberty interest. *Id*. at 481.

Protected "interests are generally limited to state-created regulations or statutes which affect the quantity of time rather than the quality of time served by a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997). In Texas, prisoners eligible for release on mandatory supervised release, may have a protected liberty interest in previously-earned good conduct time. *See Kimbrell v. Cockrell*, 311 F.3d 361, 362 (5th Cir. 2002); *Malchi v. Thaler*, 211 F.3d 953, 956-58 (5th Cir.

7

2000). However, being placed in disciplinary confinement, losing commissary and property privileges for thirty days, and remaining at the same time earning class are not sanctions which impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 481; *see also Madison*, 104 F.3d at 768 (concluding that imposing thirty days of commissary and cell restrictions as punishment constitutes mere changes in the conditions of a prisoners confinement and do not implicate due process concerns); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) ("the mere opportunity to earn good-time credits [does not] constitute a constitutionally cognizable liberty interest sufficient to trigger the protection of the Due Process Clause."), *cert. denied*, *Luken v. Johnson*, 517 U.S. 1196 (1996); *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir.) ("An inmate has neither a protectible property nor liberty interest in his custody classification ...."), *cert. denied*, 488 U.S. 985 (1988).

The due process that an inmate must receive in a disciplinary hearing is: (1) written notice of the charges against him at least twenty-four hours before the hearing, (2) a written statement of the factfinders as to the evidence relied on and the reasons for the disciplinary action taken, and (3) the opportunity to call witnesses and present documentary evidence in his defense, unless these procedures would create a security risk in the particular case. *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974); *Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000); *Walker v. Navarro County Jail*, 4 F.3d 410, 412 (5th Cir. 1993).

Here, petitioner complains that he received a reduction in classification from S-4 to Line-1, forty-five days of lost recreation, forty-five days of lost commissary, forty-five days of lost telephone privileges, and forty-five days of cell restriction. Petitioner, however, is not eligible for release on mandatory supervision. If an inmate is not eligible for mandatory supervision release,

he does not have a constitutional claim for which relief may be granted. *See Arnold v. Cockrell*, 306 F.3d 277, 278 (5th Cir. 2002). An inmate may also not successfully challenge his confinement to administrative segregation. *Sandin* at 473. Under these circumstances, due process concerns are not implicated and prison officials were not required to afford petitioner due process at the disciplinary hearing.

Petitioner may not successfully challenge a change in his time earning status either as the Fifth Circuit has specifically held, "[t]he loss of the opportunity to earn good-time credits, which might lead to earlier parole, is a collateral consequence of [petitioner's] custodial status. Yet, such speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests." *Luken v Scott*, 71 F.3d 192, 193 (5th Cir. 1995). Indeed, the Supreme Court has held that such a speculative effect "is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." *Sandin* at 487. To invoke due process considerations under this claim, petitioner would have to show that "a favorable determination" would "automatically entitle [him] to accelerated release." *Carson v. Johnson*, 112 F.3d 818, 820-21 (5th Cir. 1997) (citing *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995)). Because petitioner has not, and cannot, prove a favorable determination would entitle him to accelerated release, he has no cognizable claim to a particular time-earning status. Therefore, the petition should be dismissed.

<u>Recommendation</u>

The petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 should be dismissed.

Objections

Within fourteen (14) days after receipt of the Magistrate Judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the Magistrate Judge. 28 U.S.C. § 636(b)(1)(c).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen (14) days after service shall bar an aggrieved party from the entitlement of *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

SIGNED this 3rd day of May, 2021.

_____
Zack Hawthorn
United States Magistrate Judge