# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### BEAUMONT DISTRICT

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

JUL 2 8 2021

BY
DEPUTY_____

LATTHEN CHANCE DOUGLAS §
Petitioner

§

VS. §

§ CIVIL ACTION NO. 1:18CV312

§

BOBBY LUMPKIN, Director TDCJ §
Respondent §

---

## PETITIONER'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, LATTHEN CHANCE DOUGLAS, Petitioner, pro se, and respectfully files his objections to the U.S. Magistrate Judge's Report and Recommendation to dismiss Petitioner's 28 U.S.C. §2254 petition for writ of habeas corpus pursuant to Rule 11(a), F.R.A.P. Rule 22, and 28 U.S.C. §2253, without allowing discovery or conducting an evidentiary hearing. Petitioner also requests that his Motions for Discovery and Productions of Documents, Interrogatories, Request for Admissions and Appointment of Counsel filed

1.

filed 4 March 2019, be reconsidered.

Petitioner makes the following objections to wit:

OBJECTION NO. 1: Petitioner objects to the Report and Recommendation of the U.S. Magistrate Judge (RMJ), denying the petition without considering when Sandin requirement does not apply overcoming any hurdle.

Douglas was sexually abused by officer Francis Gabba (Gabba), and reported his actions through the chain of command starting with Janis Guillory-Jones (Jones). Douglas then reported the incident to the unit mental health department, OIG, PREA; and in grievance number 2017179813.

Captain Pedro Boykin intercepted the grievance and called Douglas to his office to threaten Douglas to withdraw the grievance or Boykin would make Douglas' life hell the rest of the time he was on the unit. Since Douglas did not withdraw the grievance Boykin locked him up in Ad-Seg and filed false disciplinary charge number 20170354777, where Douglas found guilty. Douglas appealed in grievance number 2018006138.

2.

On 27 November 2017, Douglas was singled out for harrassment by Boykin on his way for diabetic treatment. Boykin denied Douglas treatment even though he had a pass. Douglas told Boykin he would call his family for help to stop Boykin's threats and abuse by them reporting Boykin to the odbudsman, and filing a grievance.

Boykin lashed out at Douglas by telling him he fucked up and wasn't calling anybody. Boykin retaliated by using unnecessary excessive use of force on Douglas causing pain. He then locked Douglas up In Ad-Seg, and filed false disciplinary charge 20180084004, where he was found guilty. Douglas appealed in grievance number 2018076573. This petition was filed in regards to the above retalitory false charge. Douglas also filed grievance number 2018068684, for the assault on him by Boykin.

Over several years Douglas filed several grievances against Boykin. The harrassment and verbal abuse became worse. Boykin told Douglas to watch himself and keep it up and one day something would happen. That day come when Douglas reported being sexually abused,

Prisoners retain the right to freedom of speech, association, and filing grievances and complaints. U.S. Const. Amend I. The Due Process Clauses prohibits governments - including prison officials - from depriving citizens - including prisoners - from depriving life, liberty, or property without due process. U.S. Const. Amends. V & XIV. Prison officials may not interfere with these rights nor retaliate against an inmate for exercising these rights by filing false disciplinary charges. Tex. Civ. Proc. & Rem. Code Ch. 14; TDCJ PD-22 pp. 38, 41, 45; TDCJ I-202 pp. 26, 121; Tex. Gov't Code §494.001 et seq; ACA Standards 4-4097 et seq; and 28 C.F.R. § 115.72 et seq.

Inmates should not be subject to any repraisals by prison officials for participating in the grievance procedure. TDCJ AD-03.82(v). All inmates are entitled to use the grievance procedure. TDCJ AD-03.82 (IV)(C) &(E). Offenders may not be punished for threatening to take legally entitled action, such as filing a grievance or lawsuit. TDCJ GR-106, Lvl I Offenses, Code 4.0.

Douglas has a constitutional right in avoiding retaliation and false

disciplinary charges and convictions for exercising free speech and the grievance procedure. Wooly v. Maynard, 430 U.S. 705, 714 (1977). The loss of first amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. Elrod v. Borns, 427 U.S. 347, 373 (1976).

Boykin's retalitary actions were not reasonably related to legitimate penological interests. They were a arbitrary denial of Douglas' right to communicate with his family in order to get help in reporting Boykin to report to officials. Also, to deter Douglas from filing a grievance.

Boykin's revenge was motivated in substantial part by a desire to punish Douglas for exercising his free speech and filing grievances, and to deter future filings and legal actions. Bibbs v. Early, 541 F.3d 267, 271 (5th Cir. 2008). Woods v. Smith, 60 F.3d 1161, 1165 (5th Cir. 1995).

Whether good time is lost or not when an inmate is found guilty of a misconduct, prison officials will always violate the Sandin requirement if they find someone guilty of a misconduct when there is no evidence of guilt. Burnsworth v. Gunderson, 179 F.3d 771, 775 (9th Cir. 1999). Due process rights are violated even if plaintiff has demonstrated no

Cognizable liberty intrest when found guilty of a misconduct and no evidence exists to support that conviction. Id; Nonnette v. Small, 316 F. 3d 872, 879 (9th Cir. 2002).

Boykin's false testimony during the hearing lacked credibility: (1) The charge was false and done out of retaliation; (2) Boykin has a long history of retalitory actions and submitting false charges; (3) Boykin has been reprimanded for for similar violations; (4) Boykin has been the subject of several criminal and civil complaints; and (5) Stiles Unit has been under investigation for civil rights and legal violations including for retaliation actions and false disciplinary charges

Stiles Unit is partially shut down to these violations. Also, the unit DHOs are not allowed to run cases, so they have to be ran by video conference by DHOs from other sites.

The introduction of false evidence in itself violates the due process clause. U.S. v. Wallace, 673 F.Supp. 205, 207-08 (S.D. Tex. 1987); Foulds v. Courley, 833 F.2d 52, 54 (5th Cir. 1987). It is the old

situational problem of the relationship between the keeper and the kept, a relationship that is hardly conductive to a truly adjudicatory performance. Cleavinger v. Soxner, 474 U.S. 193, 203-04 (1985).

Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the procedures used. Daniels v. Williams, 474 U.S. 327, 331 (1986). It serves... as a check on misconduct which infringes on a fundamental right, or as a limitation on official misconduct...Id.

In short, substantive due process prohibits the government's abuse of power or its use for the purpose of oppression, and procedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interest without procedural safeguards. Howard v. Grirage, 82 F.3d 1343, 1349-50 (6th Cir. 1996).

OBJECTION NO. 2: Petitioner objects to the RMJ, denying the petition without considering whether he suffered liberty deprivation and/or atypical and significant hardship implicating a constitutional right overcoming the Sandin test.

The Constitution keeps the government from depriving inmates of their life, liberty, or property without due process of law, or subjecting them to cruel and unusual punishment. U.S. Const. Amends V, VIII, & XIV. It also protects inmate's right to free speech, association, freedom of religion, and the right to petition the government for redress of grievances. U.S. Const. Amend I. Further, the right of people to be secure in their persons... against unreasonsonable searches and seizures, shall not be violated. U.S. Const. IV.

Prisoners can be found to have liberty interests in three circumstances: (1) When the right at issue is independently protected by the Constitution; (2) when the challenged action causes the prisoner to spend more time in prison; or (3) when the action imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Sandin v. Conner 515 U.S. 472, 484 (1995), Wilkinson v. Austin, 545 U.S. 209, 223 (2005).

Some prison conditions exceed the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its

8.

own force. Sandin, 515 U.S. at 484. That is, they are so severe in kind or degree (or so removed from the original terms of confinement) that they amount to deprivations of liberty, regardless of the terms of state law. Id at 497.

A liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in Sandin. Wilkens, 545 U.S. at 222; Hewitt v. Helms, 459 U.S. 460, 466-67 (1983). In other words, this amounts to saying that a liberty interest can arise from what the state does in addition to what it writes down in regulations. This is in addition to liberty interests created in the U.S. and Texas Constitutions, as well as, Federal law.

Prison officials have a duty to provide humane conditions of confinement, including, adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm. Farmer v. Brennan, 511 U.S. 825, 832 (1994). This includes protections from assaults, unreasonable hazardous living conditions, sexual abuse,

and subjection to unnecessary and excessive use of force. Helling v. McKinney, 509 U.S. 25, 33 (1993).

Stiles Unit administration has habitually continued to disregard inmate's rights. It allows staff to create hostile environments of security risks and inhumane living conditions, while Douglas endured. Staff are free to abuse their charges with assaults, then retaliate when inmates seek help through the grievance process, without fear of accountability and punishment.

Prison officials are forbided to subject prisoners to cruel and unusual punishments. Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 298 (1991). Conditions violate the Eighth Amendment if they amount to the unnecessary and wanton infliction of pain. Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

Gabba acted maliciously and sadistically show diliberate indifference when he sexually abused Douglas, which was illegal. Tex. Pen. Codes §§ 12.35 & 39.04(b)(2); Tex. Gov't Code 493.001 et seq; 18 U.S.C. § 921 et seq; 28 C.F.R. § 115.116) ~(8); 42 U.S.C. § 15607.

10.

Prisoners retain a limited expectation of privacy in their persons. Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002); Bell v. Wolfish, 441 U.S. 520, 559 (1979).

Gabba—acting under Boykin's direction—conspired with Jones and Captain Lance Knod to cover up Gabba's sexual abuse. They also conspired to retaliate to deter Douglas from further filing of grievances, which included false disciplinary charges. 18 U.S.C. §§ 241 & 242.

Prison officials who do not take actions with respect to sexual assaults they are informed of can be found deliberate indifferent. Johnson v. Johnson, 385 F.3d 503, 526-27 (5th Cir. 2004).

TDCJ provides rules against retaliation for reporting sexual abuse and filing grievances and complaints, as well as, fabricated charges. TDCJ AD-22 pp. 38, 41, 45; TDCJ GR-106, Code 4.0 & 29.0; TDCJ I-202 pp. 26, 121. See also Tex. Gov't Code § 494.001 et seq; 28 C.F.R. § 115.72 et seq; PREA 42 U.S.C. § 1501 et seq; ACA Standards 4-4097.

Retaliation offends the Constitution because it threatens to inhibit exercise of a protected right. Crawford-El v. Britton, 523 U.S. 574, 588 (1998);

Ruiz v. Estelle, 679 F.2d 1115, 1154 (5th Cir. 1982).

First Amendment retaliation claim stated if prison officials issued false misbehavior reports. Gill v. Pidlypchak, 389 F.3d 379, 384 (2nd Cir. 2004); Hart v. Hairston, 343 F.3d 762, 764 (5th Cir. 2003)

During the confrontation with Boykin - that eventually led to this petition - unnecessary unprovoked use of force was used against Douglas. Tex. Penal Code §22.01(6). Boykin applied it in bad-faith and not to maintain or restore discipline, but done maliciously and sadistically to cause Douglas harm. Wilkins v. Gaddy, 130 S.Ct 1175, 1178 (2010).

Boykin's assault caused Douglas (1) injury; (2) which resulted directly and only from use of force that was clearly excessive; and (3) the excessiveness of which was clearly unreasonable. Cooper v. Brown, 844 F.3d 517, 522 (5th Cir. 2016).

Due to Boykin's retalitory actions Douglas was placed in Ad-Seg. where he endured severely inhumane conditions and deprivations amounting to cruel and unusual punishment. Conditions amounted to

12.

the unquestioned and serious deprivations of basic human needs of the minimal civilized measure of life's necessities violating Douglas' civil rights, 42 U.S.C. §2000 et seq.

Stiles Unit Ad-Seg. paints a picture of such horror as should be unrealized anywhere in the civilized world. TDCJ was ineffective at holding Stiles accountable at meeting the minimum requirements necessary to create a safe and humane environment for Douglas. Stiles Unit was operating far below any reasonable standard.

Douglas was denied/delayed chronic and acute including diabetic and mental health care. These included instances of hyerglycemia and hypoglycemia, and suicidal tendecies, which guards ignore, laughed at, and even encouraged Douglas to kill himself. Since guards didn't do required security and safety and wellness checks, Douglas' life always hung on the balance.

The Constitution requires prison authorities to provide inmates with reasonable adequate medical care. Newman v. Alabama,

13.

559 F.2d 283, 291 (5th Cir. 1978); Tex. Admin. Code § 404.154;
ADA 42 U.S.C. § 1201 et seq. This includes routine and
emergency medical, diabetes, psychological, and psychiatric
care. Riddle v. Mondragon, 83 F.3d 1197, 1203 (10th Cir. 1996)

Denial of recommended medical treatment is often
sufficient to show deliberate indifference. Grobert v. Caldwell,
463 F.3d 339, 346 (5th Cir. 2006); Allen v. Thomas, 388 F.3d 147,
150 (5th Cir. 2004)

Stiles Unit administration's poor response - or lack of -
to Douglas' deteriorating mental and physical health is
significantly due to chronic understaffing and poor training.
This left a continuing pattern of officials ignoring Douglas'
serious health issues and showing deliberate indifference to
his life, health, safety and Constitutional rights.

Douglas' cells were extremely filthy with unhealthy
sanitary conditions in which he wasn't given cleaning supplies
despite asking. The cells were smeared with blood, urine,

feces, and other bodily fluids. There was also an infestation of roaches, rodents, spiders, and birds that left dropping everywhere.

A prisoner must be provided with shelter which does not cause his degeneration or threaten his mental and physical well being. Gates v. Collier, 390 F. Supp 482, 486-89 (N.D. Miss, 1975), aff'd 525 F.2d 965 (5th Cir. 1976).

A sanitary environment is a basic human need that a penal institution must provide for all inmates, including adequate arrangements for cleaning and garbage disposal. Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004)

Douglas was rarely afforded an opportunity to shower, and when he was able was left in the extremely small enclosed stall without ventilation for hours at a time. The shower was also filthy with mold and clogged drain.

Prisoners must have reasonable opportunity for personal cleanliness. Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir, 1998).

Lack of showers deprives inmates of basic hygiene and threatens their physical and mental well-being. Id.

Douglas was denied access to law and general libraries, and telephone, which prevented him from filing a meaningful grievance and complaint, and familial association. Denial of familial association prevented Douglas from reporting Boykin's retalitory actions.

Prisoners have a fundamental constitutional right to adequate, effective, and meaningful access to courts to challenge violations of constitutional rights. Bounds v. Smith, 430 U.S. 817, 828 (1977); Procunier v. Martinez, 416 U.S. 396, 419 (1974). Regulations and practices that unjustifiably obstruct... the right of access to the courts are invalid. Procunior, 416 U.S. at 419.

The right to file a court action might be said to be his remaining most fundamental political right, because it preserves all rights. McCarthy v. Madigan, 503 U.S. 140, 153 (1992).

Communicating with friends, family, and other inmates is a Constitutional right. Procunier, 416 U.S. at 408-09;

16.

Jackson v. Cain, 864 F.2d 1235,1248-49 (5th Cir. 1989). Inmates also have a right to telephone access subject to reasonable limitations. Johnson v. State of California, 207 F.3d 650, 656 (9th Cir. 2000); Roberts v. U.S. Jaycees, 468 U.S. 609, 618 (1984).

Douglas was denied the opportunity to attend religious services or receive spiritual guidance and counseling, educational or rehabilitative classes, nor recreation.

Reasonable opportunities must be offorded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments. Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972); RLUIPA 42 U.S.C. § 2000cc; TRFRA Tex. Civ. Prac & Rem. Code.

Some form of regular exercise is extremely important to the psychological and physical well-being of the inmates. Spain v. Procunier, 600 F.2d 189,199 (9th Cir. 1979). Wilson, 501 U.S. at 304.

Douglas was exposed to environmental toxic smoke daily from K-2 and other drugs, tabacco, and other inmates starting fires. Douglas' exposure to this toxic environment posed an unreasonable

17.

risk of serious damage to his health, including harm that may occur in the future. Helling, 509 U.S. at 33-35.

Douglas was exposed every day and night to excessive noise caused by guards' harrassment of inmates and inmates constantly yelling and banging on their cell doors. The above conditions combined with the excessive noise interrupted or prevented Douglas from sleeping, which affected his basic living requirement, and physical and mental health.

The effectiveness of sleep deprivation as a tool of torture has long been reecognized as unconstitutional punishment. Beck v. Pate, 367 U.S. 433 (1961).

The above conditions and treatment inposed on someone without mental health disorders can create mental stress and breakdown leaving long term effects. These harsh deplorable conditions significantly aggravated Douglas' mental and physical health to the point of constant suicidal idealation and attempts. Douglas was particularly susceptible to the psychological effects of isolation. Thus, Douglas' placement

in Ad-Seg. and exposure to extremely harsh conditions and deprivations was a significant departure from conditions of general population. It was an atypical and significant hardship at any length of time. Gillis v. Litscher, 468 F.3d 495, 490-91 (7th Cir. 2006); Mitchell v. Horn, 318 F.3d 523, 527-28 (3d Cir. 2003)

OBJECTION NO 3: Petitioner objects to the RMJ, denying the petition because all claims are not exhausted when it failed to use proper exhaustion standard.

Before filing a federal habeas petition inmates must exhaust all AVAILABLE state procedures. 28 U.S.C §2254(b)-(c). (emphasis added). PLRA exhaustion requirement applys to 42 U.S.C§1983 claims, but not habeas corpus petitions, 42 U.S.C. §1997(e); Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 632-34 (2d Cir. 2001). But petitioners do not need to go to state court if state remedies are unavailable. 28 U.S.C. §2254(b)(1)(B).

Since Texas law does not accept a habeas petition for prison disciplinary convictions state court remedies are not available.

Therefore, a §2254 petition is Douglas' first opportunity to present all of his claims within a court. Douglas need only comply with TDCJ's grievance procedure under AEDPA. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006); Tex. Gov't Code §501.008 (b).

The disciplinary appeal process is done through grievances procedures on forms I-127 and I-128. TDCJ AD-04.35 pp. 6-7, 9. Alerting prison administration to the fact Douglas is appealing his conviction is enough to give officials time and opportunity to correct any deficiencies. Grievance rules do not state inmates must raise all claims they intend to litigate later in court. In fact, an effective grievance program has many benefits for TDCJ, including...averting litigation. TDCJ AD-03.82 p.2.

The prison's rules govern the level of detail necessary in a grievance to comply with the grievance procedures and will vary from system to system and claim to claim, but it is the prison's requirements... that define the boundaries of proper exhaustion. Jones v. Beck, 549 U.S. 199, 219-20 (2007).

A grievance need not include legal terminology or legal theories

20.

unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009); Johnson, 385 F.3d at 517-18; Woodford, 548 U.S. at 90-91.

AEDPA does not apply to habeas review for a disciplinary guilty finding that had not been reviewed by a state court. A prison disciplinary hearing is not a state court nor is a DHO a certified judge or an officer of the court. Since Texas provides no means for state court review of a prison disciplinary conviction, Douglas properly exhausted all available remedies per his Step One and Two grievances.

Ineffective assistance of counsel claim could not be raised in state court because (1) state court remedies not available, and ~~two~~ (2) disciplinary hearing record does not contain enough information

21.

to evaluate the claim, This court is proper venue for developing the record of counsel substitute's representation.

An ineffective assistance of counsel claim may be brought in a collateral proceeding ... whether or not the petitioner could have raised the claim on direct appeal. Massaro v. United States, 538 U.S. 500, 504 (2003).

In the event the court rules some claims are unexhausted, it should allow the petition to proceed with the exhausted claims. Although courts MAY dismiss entire petitions in some circumstances, this is Discretionary. Rhines v. Weber, 544 U.S. 269, 278 (2005) (emphasis added).

If a petitioner presents a district court with a mixed petition ..., the court should allow the petitioner to delete the unexhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief. Id.

There is a sufficient probability that failure to review Douglas' claims will result in a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Murray v. Carrier, 477 U.S. 478, 496 (1986); Coleman v. Thompson, 501 U.S. 722, 750 (1991).

# CONCLUSION

Based on the foregoing, the RMJ should be rejected and relief should be granted. In the event petition is denied, the court should issue a certificate of appealability for an appeal to the Fifth Circuit Court of Appeals.

Douglas has alleged pursuant to 28 U.S.C. §2253,(1) A reasonable jurist would find the Constitutional claims are debatable, or (2) reasonable jurists would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and debatable whether this court was correct in its procedural ruling. Slack v. McDaniel, 529 U.S. 473, 484 (2000); Fed. R. App. P. 22(b).

# PRAYER

WHEREFORE, based on the foregoing, Petitioner respectfully prays this Honorable Court reject the RMJ and grant the petition. In the alternative, issue a COA. All other relief the Court deems just, proper, and equitable

Respectfully submitted this 22nd day of July 2021.

23.

_Latthen C. Douglas_

Latthen C. Douglas—Petitioner
Pro Se Representation
TDCJ No. 1746123
Michael Unit
2664 FM 2054
Tennessee Colony, TX. 75886

## CERTIFICATE OF SERVICE

I hereby certify, that a true and correct copy of the foregoing document has been mailed to TDCJ-CID Director Bobby Lumpkin, Respondent, through his attorney of record through the Mark W. Michael mail system for processing with the U.S. Postal Service postage prepaid on 22 July 2021, addressed to P.O. Box 12548, Austin, TX. 78711.

Executed this 22nd day of July 2021.

_Latthen C. Douglas_

Latthen C. Douglas

24.

Latthen C. Douglas
TDCJ No. 1746123
Michael Unit
2664 FM 2054
Tennessee Colony, TX. 75886
22 July 2021

Dist. Clerk
Eastern Dist. of Tex.
300 Willow
Room 104
Beaumont, TX. 77701

RE: Douglas v. Lumpkin
    Civil Action No. 1:18CV312

Dear Clerk:

 Enclosed please find one original and one copy of Objections to RMJ. Please file the original with the court for consideration. Please date-stamp the ~~only~~ copy and return it to me in the SASE.

 If you have any questions please contact me at the above address.

    Sincerely,

    Latthen C. Douglas-Petitioner
Pro Se Representation

Latthen C. Douglas
TDCJ No. 1746123
Michael Unit
2664 FM 2054
Tennessee Colony, TX. 75886



CLERK, U.S. DISTRICT COURT
RECEIVED

JUL 28 2021

EASTERN DISTRICT OF TEXAS
BEAUMONT, TEXAS

U.S. District Court
Eastern District of Texas
Beaumont Division
300 Willow
Room 104
Beaumont, TX. 77701

Legal Mail

Legal Mail